[Nos. A113878, A114188. First Dist., Div. Four. Apr. 27, 2007.]

DAVID HAYDEN et al., Plaintiffs, Cross-defendants and Appellants, v. ROBERTSON STEPHENS, INC., Defendant, Cross-complainant and Respondent.

COUNSEL

Bartko, Zankel, Tarrant & Miller, John J. Bartko and John S. Lottier for Plaintiff, Cross-defendant and Appellant David Hayden.

Crowley, Stringer & Fenske and Robert B. Stringer for Plaintiff, Cross-defendant and Appellant Storey Hayden.

Reed Smith, Paul D. Fogel and David C. Powell for Defendant, Cross-complainant and Respondent.

## OPINION

**SEPULVEDA, J.**—A brokerage firm lent money to a client. The loan was secured by the client's shares in a technology company the client founded. When the market value of the corporate shares fell, the client pledged real property as additional security. The client defaulted on the loan, owing more than $25 million. The client sued the brokerage firm for alleged breach of fiduciary duty in giving financial advice, and the brokerage firm cross-complained to collect on the loan.

The parties agreed to arbitrate their dispute, and the arbitrator ruled in favor of the brokerage firm. The trial court confirmed the arbitration award over the client's objection that the award should be vacated because the arbitrator suppressed information showing him to be disqualified to act as a neutral arbitrator. The client maintained that the arbitrator should have disclosed that he provides dispute resolution services to a bank. An arbitrator must disclose employment arrangements with a party to the proceeding, and the client argued that the bank became a party when the bank's corporate parent acquired the brokerage firm before the arbitration award was final. The client renews this argument on appeal following entry of judgment. We reject the argument and affirm the judgment.

## FACTS

The parties' dispute is long and complicated but the facts that concern us may be briefly summarized. In 1997, David Hayden founded Critical Path, Inc., an Internet electronic mail service provider. In March 1999, Hayden's company publicly issued its stock and Hayden's founder shares became worth more than $100 million, increasing to $200 million over the following months. Hayden had opened a brokerage account with Robertson Stephens, Inc. (Robertson Stephens), a month before the public offering, and pledged his founder shares as collateral for an initial loan of $2 million. Ultimately, Robertson Stephens authorized an aggregate loan of $30 million. Hayden sold some of his shares and, through sale proceeds and loans, acquired expensive residential real estate in several locations.

In late 2000, the market value of Hayden's shares fell, and Hayden and his wife signed deeds of trust on residential real estate in favor of Robertson Stephens as additional security for the loan.[1] Hayden defaulted on the loan in

---

[1] Hayden and his wife, Storey Hayden, are now divorced and filed separate appeals contesting the judgment of foreclosure. The appeals were consolidated, and Storey Hayden joins in her former husband's arguments on appeal.

early 2002, and Robertson Stephens began foreclosure proceedings. In November 2002, Hayden filed a complaint against Robertson Stephens alleging breach of fiduciary duty and other claims related to the brokerage firm's provision of financial services and advice. Robertson Stephens cross-complained to collect on the loan.

The parties agreed to arbitrate their dispute and stipulated that the arbitrator would act as a referee on the judicial foreclosure claim. The parties to the arbitration agreement were the Haydens, Robertson Stephens, and FleetBoston Financial Corporation (FleetBoston), which had acquired Robertson Stephens before the litigation began. The parties mutually agreed to appoint Richard Chernick of Judicial Arbitration & Mediation Services (JAMS) as the arbitrator. Chernick gave the parties a disclosure report listing his and JAMS's prior, pending, or prospective employment by the parties or counsel.

The arbitrator held an evidentiary hearing over the course of five days in September 2003. The matter was argued and submitted, and the arbitrator issued an interim award on October 23, 2003, finding in favor of Robertson Stevens on both the complaint and cross-complaint. The arbitrator invited Robertson Stevens, as the prevailing party, to file an application for attorney fees and costs, and stated an intention to issue his final award in November 2003.

Issuance of the final award was delayed and complicated by a corporate acquisition that Hayden used in an effort to disqualify the arbitrator from completing the proceedings. A few days after issuance of the interim award adverse to Hayden, Bank of America Corporation announced that it was buying FleetBoston. FleetBoston was a defendant, as it had earlier acquired Robertson Stevens and had taken over its operations in 2002. Hayden maintained that Bank of America Corporation and its subsidy, Bank of America, N.A., were now parties to the arbitration by virtue of their corporate affiliation with FleetBoston.[2] Hayden demanded that the arbitrator, Chernick of JAMS, disclose all present and prospective relationships with Bank of America Corporation and later sought to disqualify Chernick. Hayden argued that Chernick should be disqualified because JAMS provides arbitration services to Bank of America Corporation or its related entities. JAMS reviewed Hayden's disqualification request, and denied it in April 2004.

---

[2] Hayden repeatedly refers to "Bank of America" without specifying the precise corporate entity. Sometimes, Hayden's arguments seem to relate to Bank of America Corporation, and other times to Bank of America, N.A. We will assume that Hayden's arguments encompass both banking entities.

JAMS determined that "Bank of America" was not a party to the arbitration, making disclosures unnecessary. JAMS returned the matter to Chernick for further proceedings.

The arbitrator served his final award upon the parties in June 2004. The arbitrator dismissed Hayden's claims against Robertson Stephens, and awarded the brokerage firm roughly $27 million on its loan to Hayden. Robertson Stephens was awarded approximately $1.5 million in attorney fees and costs. The arbitrator found Hayden's wife to be without personal liability, with her liability limited to enforcement of the judgment against community property.

Robertson Stephens moved to confirm the arbitration award, and Hayden moved to vacate it. Following a hearing, the court confirmed the arbitration award in September 2004. Hayden petitioned this court for a writ of mandate, which we summarily denied in December 2004. A judgment of foreclosure on real estate and stocks constituting collateral for the loan was filed in February 2006. Motions for a new trial by Hayden and his wife were denied. These appeals by Hayden and his wife followed in April 2006.

## DISCUSSION

The dispositive question on appeal is whether Bank of America Corporation (Bank of America Corp.) or Bank of America, N.A., was a party to the proceeding for arbitral disclosure purposes. (Code Civ. Proc., §§ 170.1, subd. (a)(8), 1281.9, subd. (a)(1).)[3] We answer the question in the negative. Accordingly, the arbitrator was not required to disclose past, present, or prospective employment relationships with either banking entity, and no ground exists for vacating the award for failure to disclose. (§ 1286.2, subd. (a)(6).)

A. *Arbitral disclosure requirements*

■ In any private arbitration, the proposed neutral arbitrator is required to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a).) This general duty to disclose more specifically includes a duty to disclose "[t]he existence of any ground specified in Section 170.1 for disqualification of a judge." (§ 1281.9, subd. (a)(1).) Past or prospective employment as a dispute resolution neutral

---

[3] All further section references are to the Code of Civil Procedure.

may disqualify a judge under certain circumstances. (§ 170.1, subd. (a)(8)(A).) Obviously, this subdivision concerning judicial disqualification cannot be applied wholesale to professional arbitrators regularly employed in the field.

The arbitral disclosure statute thus provides that, for purposes of section 170.1, subdivision (a)(8), "the proposed neutral arbitrator shall disclose whether or not he or she has a current arrangement concerning prospective employment or other compensated service as a dispute resolution neutral or is participating in, or, within the last two years, has participated in, discussions regarding such prospective employment or service with a party to the proceeding." (§ 1281.9, subd. (a)(1).) Section 170.1, subdivision (a)(8)(B)(ii) states that a "party" includes "the parent, subsidiary, or other legal affiliate of any entity that is a party and is involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding."

B. *Nondisclosure as a ground to vacate an arbitration award*

An arbitration award shall be vacated if the arbitrator "was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." (§ 1286.2, subd. (a)(6).) Section 1281.91, subdivision (d) requires arbitrator disqualification if any section 170.1 ground exists and a party demands disqualification "before the conclusion of the arbitration proceeding." Robertson Stephens does not contest Hayden's position that developments after submission of the arbitration matter for decision, like the corporate acquisition here, can provide grounds to vacate an award.

C. *There were no grounds to vacate the arbitration award*

Hayden argues that Bank of America Corp.'s midarbitration acquisition of a party to the arbitration agreement made Bank of America Corp. and its subsidiary, Bank of America, N.A., parties to the arbitration proceeding for arbitral disclosure purposes. An arbitrator must disclose prospective employment with a party to the proceeding. (§ 1281.9, subd. (a)(1).) A party is elsewhere defined to include "the parent, subsidiary, or other legal affiliate of any entity that is a party and is involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding."[4] (§ 170.1, subd. (a)(8)(B)(ii).)

---

[4] Robertson Stephens questions whether all of section 170.1(a)(8), including its definition of a party in subdivision (a)(8)(B)(ii), is incorporated by section 1281.9, subdivision (a)(1)'s reference to section 170.1, subdivision (a)(8). For purposes of argument, we assume that section 170.1, subdivision (a)(8)(B)(ii)'s definition of party applies.

Hayden advocates a particular, and ultimately insupportable, interpretation of the definition of "a party." According to Hayden, a party includes the legal affiliate of a named party if the original named party is itself involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding. The legal affiliate's connection to the arbitration proceeding is irrelevant, Hayden insists. All affiliates of a named party are parties, even those with no connection to the issues in arbitration. Robertson Stephens counters that the correct interpretation is that a party includes the legal affiliate of a named party only if the affiliate is involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding. Robertson Stephens is right.

■ "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.] When ' "statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." ' " (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) A foray into legislative history or other efforts at construction are unnecessary here because the language is clear. ■ A party includes a legal affiliate "of any entity that is a party and is involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding." (§ 170.1, subd. (a)(8)(B)(ii).) Plainly, it is the legal affiliate (not the entity that was the original named party) that must be involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding.

■ Hayden's contrary interpretation of the statute, in which only the named party must be involved in the underlying matter being arbitrated, would make most of the statutory definition surplusage. A party is necessarily "involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding." The entire qualifying clause requiring involvement in the underlying matter is thus meaningless if the clause modifies "any entity that is a party." "A construction rendering some words surplusage is to be avoided." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 270 [272 Cal.Rptr. 153, 794 P.2d 911].) Had the Legislature intended to deem all affiliates of a named party under the judge disqualification and arbitral disclosure standards as parties, it could have achieved this objective by simply defining party to include, without qualification, the parent, subsidiary, or other legal affiliate of any entity that is a party. For the qualifying clause to have any meaning, it must be read to modify "parent, subsidiary, or other legal affiliate." It is this legal affiliate that must be "involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding." (§ 170.1, subd. (a)(8)(B)(ii).)

█ Hayden's alternative argument is that Bank of America Corp. and Bank of America, N.A., *were* involved in the underlying matter. Hayden argues that Bank of America Corp. is involved because it is liable for FleetBoston's conduct as a successor corporation. But the statute does not deem a corporation a party to the proceeding based on potential successor liability. A parent corporation must be "involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding." Bank of America Corp. has no involvement in the broker relationship and loan agreement between Hayden and Robertson Stephens that generated the issues for arbitration.

Nor does Bank of America, N.A., have any involvement in the broker relationship and loan agreement that were arbitrated. While Hayden had conflicts with Bank of America, N.A., over unpaid loans, those loans were separate and apart from the arbitrated issues. Bank of America, N.A., held deeds of trust on residential property securing $9.5 million in bank loans to Hayden. Robertson Stephens held junior deeds of trust on those same properties and, when the bank began foreclosure proceedings, Robertson Stephens bought the bank loans to safeguard its junior liens on the properties. In the arbitration agreement, Hayden waived any claims against Robertson Stephens or FleetBoston arising out of the acquisition of the bank loans and liens, and Robertson Stephens made no claim in the arbitration proceeding for balances due on the bank loans assigned to it. In short, while Hayden had disputes with Bank of America, N.A., those disputes were unrelated to "the transaction, contract, or facts that gave rise to the issues subject to the proceeding," which were restricted to Robertson Stephens's broker relationship and margin loans to Hayden. Bank of America, N.A., was not a party to the arbitration proceeding. The arbitrator had no obligation to disclose prospective employment with either Bank of America Corp. or Bank of America, N.A., as they were not parties to the proceeding. (§§ 170.1, subd. (a)(8), 1281.9, subd. (a)(1).)

As a final argument, Hayden maintains that there exists substantial doubt about the JAMS arbitrator's impartiality because Bank of America, N.A., is a frequent client of JAMS in consumer litigation. (§§ 170.1, subd. (a)(6), 1281.9, subd. (a)(1).) Bank of America, N.A.'s retention of JAMS for arbitration services provides no evidence of bias. The bank was not a party to the arbitration or otherwise involved in the arbitrated dispute. In any event, there is no evidence that arbitrator bias played any role in the award. The arbitrator, in his interim award, had resolved all liability issues adverse to Hayden before Bank of America Corp. acquired a party to the arbitration. No one can reasonably entertain a concern that the arbitrator's decision was motivated by partiality for Bank of America Corp. or its subsidiary. (§§ 170.1, subd. (a)(6)(iii), 1281.9, subd. (a)(1).)

## DISPOSITION

The judgment is affirmed.

Ruvolo, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied May 16, 2007, and appellants' petition for review by the Supreme Court was denied August 8, 2007, S153236. Chin, J., did not participate therein.