Filed 6/13/23 Modification and Denial of Rehearing (unmodified opn. attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NORTH AMERICAN TITLE COMPANY et al.,<br><br>      Petitioners,<br><br>            v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>      Respondent,<br><br>CAROLYN CORTINA et al.,<br><br>            Real Parties in Interest. | F084913<br><br>(Super. Ct. No. 07CECG01169)<br><br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the following modification be made to the published opinion filed herein on May 19, 2023:

1.  On page 2, the third sentence of the first paragraph beginning with "At the time of the comments" is deleted and replaced with the following sentence:

"At the time of the comments, no judgment had been entered, and issues of fraudulent transfer, alter ego, or successor liability were never properly presented to the court, let alone ultimately decided."

2.  On page 44, following the sentence "Rather, the statement was sufficient and the issue of disqualification should have been reviewed on the merits by another judge. (§ 170.3, subd. (c)(5).)," add as footnote 10 the following footnote, which will require renumbering of all subsequent footnotes:

"It was necessary to discuss the merits of petitioner's arguments of bias to determine the facial sufficiency of the statement of disqualification. To note, this holding is focused solely on the determination whether the statement for disqualification was facially sufficient. It is not, nor is it

intended to be, an ultimate finding if disqualification is required under section 170.1, subdivision (a)(6)(A)(iii)."

There is no change in the judgment.

Real party in interests' petition for rehearing is denied.


                                                            SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


SNAUFFER, J.

2.

Filed 5/19/23 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NORTH AMERICAN TITLE COMPANY et al., <br><br> Petitioners, <br><br> v. <br><br> SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent <br><br> CAROLYN CORTINA et al., <br><br> Real Party in Interest. | F084913 <br><br> (Super. Ct. No. 07CECG01169) <br><br><br> **OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Jeffrey Y. Hamilton, Jr., Judge.

Morgan, Lewis & Bockius, Thomas Peterson, Barbara J. Miller and John D. Hayashi, for Petitioners.

No appearance made for Respondent.

Wagner Jones Kopfman & Artenian, Andrew B. Jones and Lawrence M. Artenian; Cornwell & Sample, Stephen R. Cornwell and Rene' Turner Sample; Wanger Jones Helsley, Patrick D. Toole, for Real Party in Interest.

-ooOoo-

Petitioner, formerly known as North American Title Company, Inc. and now known as Lennar Title, Inc. (Lennar Title), alleges the trial judge improperly struck its statement of disqualification for cause as untimely, insufficient, and successive. (See Code Civ. Proc.,[1] § 170.4, subds. (b), (c)(3).) During oral argument, the trial judge made comments accusing petitioner and other defendants of participating in a "name change shell game," a "corporate game of three-card monte," and that they were engaged in "more trickery" and "scheming" to evade payment. At the time of the comments, no judgment had been entered, and issues of fraudulent transfer, alter ego, or successor liability were never presented to the court, let alone ultimately decided.

Petitioner filed the instant statement for disqualification for cause roughly a year after the comments were made, but during which time the superior court judge was subject to preemptory disqualification under section 170.6 and disqualification for cause by codefendants, and the matter was stayed pending appellate review of those filings. The trial judge struck petitioner's statement for disqualification as untimely asserting petitioner knew of the statements for years before seeking disqualification; successive based on finding petitioner was inextricably intertwined with codefendant and treated petitioner as if it, not codefendant, had filed the prior statement of disqualification; and insufficient for failing to allege facts to support a finding requiring disqualification.

Upon review, we determine a statement of disqualification for bias, prejudice, or appearance of impartiality cannot be found to be impliedly waived as untimely under section 170.3, subdivision (b)(2). (§ 170.3, subd. (b)(2) ["There shall be no waiver of disqualification if … [t]he judge has a personal bias or prejudice concerning a party."].) Additionally, petitioner had never filed a prior statement of disqualification and the statement was not insufficient on its face. Finding the order striking the statement of

---

[1]    Further statutory references are to the Code of Civil Procedure, unless otherwise stated.

disqualification flawed in several respects, we grant the writ and order the superior court to vacate the order striking the statement of disqualification. As the statement of disqualification was stricken seven days after it was served, the trial judge shall be provided three days from the date the statement of disqualification is reinstated to respond before being deemed to have consented to disqualification by operation of time. (§ 170.3, subd. (c)(3) & (4).)

### FACTS

*Overview of the Superior Court Proceeding*

In 2007, plaintiff Carolyn Cortina filed a class action complaint alleging various wage and hour violations against her employer, then named North American Title Company, Inc., a California corporation. The complaint was amended in 2009 and 2010 to add 12 additional named plaintiffs and class representatives.

In 2010, the superior court granted certification to two classes; the "exempt" and "non-exempt" subclasses, referring to groups of employees that were categorized as salaried and hourly-wage employees, respectively. Before proceeding to a court trial in September 2015, class representatives dismissed statutory wage and hour causes of action under the Labor Code and proceeded solely under Business and Professions Code section 17200 et seq., also known as the unfair competition law.

In October 2016, following an approximate 41-day bench trial, the trial judge issued a statement of decision decertifying the non-exempt class and finding liability in favor of class representatives as to the exempt class. In the statement of decision, the trial judge held "due to the consumption of time that would be required to assess the amounts of individual restitution," it appointed a referee to determine damages based on the individual testimony of both class representatives and absent class members. Over the course of several years following the liability phase of trial, the referee held individual hearings and obtained testimony of nearly 250 class members. Judgment was ultimately

entered on August 31, 2022, against Lennar Title in the amount of approximately $43.5 million.

According to the docket, the trial judge made his first ruling in the case in September 2010, presided over the court trial as to liability in 2015 and 2016, and was assigned as the judge for all purposes on June 25, 2020.

### *Corporate Restructuring and Sale of Name to Different Corporate Entity*

A series of business transactions occurred in 2018 and 2019 resulting in the sale of the name North American Title Company, Inc. to a different company. States Title FTS Title Company, a separate corporate entity with a separate entity number from the Secretary of State (Cal. Entity No. C4102990), obtained the right to use the name North American Title Company, Inc. from petitioner's parent companies. On January 7, 2019, the companies switched names. Lennar Title filed amended articles of incorporation and changed its name from North American Title Company, Inc. to CalAtlantic Title, Inc. At the same time, States Title FTS Title Company amended its articles and adopted the name North American Title Company, Inc.

The name change did not last long. On February 17, 2021, CalAtlantic Title, Inc. adopted its current name as Lennar Title, Inc. On May 12, 2021, States Title FTS Title Company abandoned the use of the North American Title Company, Inc. name, and changed to its present name, Doma Title of California, Inc. (Doma Title). Based on the exhibits filed with this petition, Lennar Title and Doma Title have retained the use of those corporate names.

Although trial had commenced in the action years earlier, the business transactions and corporate name changes caused class representatives to seek additional discovery and attempt to add Doma Title as a defendant to the action. In adjudicating issues arising from class representatives' efforts to conduct discovery and amend its complaint to add a new party after liability had been determined, the trial judge made comments about

4.

Lennar Title and Doma Title, which both parties relied upon to seek to disqualify the trial judge for cause.  (§ 170.3, subd. (c).)

***Efforts to Conduct Financial Discovery and to Add Doma Title as a Party***

Starting in April 2019, class representatives moved to reopen discovery to conduct a limited investigation into Lennar Title's finances and the relation of Lennar Title to the other entities involved in the business transaction.  Lennar Title opposed reopening discovery as the original discovery cutoff expired seven years earlier in 2012.  Alternatively, Lennar Title argued class representatives had yet to obtain a judgment and could not avail themselves to the discovery entitled to judgment creditors.  The trial judge granted the request to reopen discovery, and additional discovery motions followed.  The dispute culminated with Lennar Title filing a petition for writ of mandate with this court.  We issued a temporary stay of the deposition of Lennar Title's person most knowledgeable pending the determination of the writ petition, but ultimately denied the petition and lifted the stay on November 26, 2019.  The order noted Lennar Title "raises legitimate concerns regarding whether discovery of financial information is relevant (see Civil Code, § 3295) and statutorily authorized to be conducted during trial.  (Code Civ. Proc., §§ 2024.020, 2024.050.)"  Ultimately, we held Lennar Title had not made a showing of irreparable harm as it was entitled to object to the production of attorney-client privileged communications.

Having conducted discovery, class representatives moved to amend the complaint to add "North American Title Company, Inc." and "Cal Atlantic Title Company, Inc." as defendants.  Two points created significant confusion.  First, class representatives had misnamed Lennar Title as "North American Title Company" rather than "North American Title Company, Inc." in their first two complaints.  No corporation operating in California was legally named "North American Title Company," but class representatives refused to remove the name from the caption under the belief Lennar Title was operating

5.

under multiple names.  Second, as the motion to amend was made after January 7, 2019, Lennar Title and Doma Title had switched names.  Therefore, the attempt to amend the complaint to add "North American Title Company, Inc." would involve bringing a new and previously unnamed corporate entity into the litigation.  Class representatives believed otherwise, arguing they were "not adding new parties," but "adding new names for the same party Defendant."  The proposed amendments to the complaint added the additional defendants, but no new factual allegations or causes of action were otherwise included.  Lennar Title did not object to the amendment adding CalAtlantic Title, Inc. (as it was its current legal name) but did object to the amendment to add "North American Title Company, Inc." to the extent the amendment was an attempt to add Doma Title as a new party to the litigation.  It explained in detail in its informal correspondence, written briefing, and at oral argument how, after January 7, 2019, "North American Title Company, Inc." was the name of Doma Title, how Doma Title was a distinct and different corporate entity from Lennar Title, how Doma Title did not exist until 2018, and how allowing such amendment would require formal service of the amended complaint on Doma Title.[2]

### *Hearings on Motion to Amend to Add Doma Title*

On June 23, 2020, the trial judge issued a tentative ruling denying the motion to amend finding the causes of action against Doma Title did not relate back to the claims in the action.  The tentative ruling explained, "The proposal to add the current holder of the name North American Title Company, Inc. [i.e., Doma Title] is premised on the transfer agreement and other conduct occurring after the finding of liability, and appears to be premised on the Fraudulent Transfer Act, found at Civil Code section 3439 et seq. or some similar theory.  That does not relate back to the original pleading, and would appear

---

[2]  Doma Title was not a party to the proceeding at the time the motion to amend was filed and was not able to oppose the motion on its own behalf.

6.

to require a new cause of action or another case." The trial judge also noted Lennar Title was "correct that service would be required if such a pleading [was] filed."

At the hearing on the motion held the next day, the trial judge discussed the corporate restructuring of the North American Title entities, and noted his potential discomfort:

> "You know, just at the base of it all, it certainly feels like we're all in a carnival and we're playing a shell game with a whole bunch of shells and only one nut. It's – you know, again, from the face of it, it doesn't even appear that defendant is trying to hide it very much, you know, they are playing a shell game on purpose. They've got a big potential liability and they want to try to avoid it."

While the trial judge's comments alluded to Lennar Title allegedly attempting to evade enforcement of the future judgment, he immediately provided the following mitigating statements:

> "I guess the problem for the Court, is as you mentioned, this is certainly going to be appealed. It's a potential big money judgment, potentially. So I would expect it. And so that's why the Court goes back to if we end up getting to this -- if you want me to somewhat put this on pause until these other events occur, then this is not necessarily important right now, but the Court's not totally comfortable at this point, which is why the tentative looked like it did, in saying you can[not] amend the complaint. As [counsel] indicated, if this is a nonparty, the Court doesn't know, or doesn't have the legal support for allowing that. You know, I'm -- you look at fraudulent transfers act, or alter ego, or things like that, post judgment, that's different. So those are the kind of issues that I'd probably ask both sides to brief were we to get to it as preview of coming attractions. So we don't necessarily have to do it based on what you're saying right now."

Lennar Title's counsel responded to the comments. Counsel noted the framing of the corporate transaction as a shell game implied a nefarious purpose on Lennar Title's behalf. Instead, she explained Lennar Title received monetary consideration for the sale of some of its assets, and remained a going concern. Counsel explained:

> "I did want to address the comment that it appears to the Court that the defendant doesn't dispute a shell game or is trying to hide it. I think that

that is not a proper representation of the circumstance. I think that North American -- certain assets of North American Title Company, Inc., were sold. There wasn't -- it was an asset sale, and there was money received by what is now CalAtlantic Title for those assets. And CalAtlantic Title, Inc., continues to operate and continues to have the assets that were transferred to it.

"So this isn't a situation where I think the idea that there's some kind of shell game, which infers some nefarious purpose, that isn't what happened here. We have provided the -- CalAtlantic Title Company, Inc., has provided extensive transaction documents to the plaintiffs. They produced the list of assets that were transferred. They produced the information about what was received in exchange for those assets. They've provided information about what remains operating under CalAtlantic Title in California. So I think the inference that there's some type of effort in this case, or that this transaction somehow was motivated by this case, certainly that's not the defendant's perspective."

After supplemental briefing was submitted, the trial judge granted the motion to amend in contravention of the positions expressed in his tentative ruling. He found "North American Title Company" and "North American Title Company, Inc." were the same entity, even though "North American Title Company, Inc." was the name of Doma Title at the time. The order thereby added Doma Title to the action.

### *Failure to Serve Doma Title with a Summons and Complaint*

On March 10, 2021, class representatives filed a third amended complaint naming Doma Title as a defendant. The complaint was not served on Doma Title; rather, class representatives only e-mailed a copy of the complaint to counsel for Lennar Title.

Although it was not served, Doma Title specially appeared in the action and moved to quash for lack of service of process on April 8, 2021. Doma Title argued since it was not served with a summons and complaint, the court lacked jurisdiction over it as a party to the litigation. Class representatives opposed the motion on several grounds. They argued the court had personal jurisdiction over Doma Title based on its minimum contacts and presence in California. Class representatives also believed service was not necessary as the newly added defendant was not a new party, but rather a different name

8.

for the existing defendant. Lastly, class representatives presented evidence indicating that as part of the purchase of the North American Title Company, Inc. name and other assets, Doma Title had contracted for Lennar Title to indemnify it for any liability arising from this litigation, as well as from incurring the continuing costs of litigation. Based on the indemnification and duty to defend, class representatives concluded Lennar Title intended to separate its assets from the liabilities arising from this litigation and evade payment on the eventual judgment.[3]

***Hearing on the Motion to Quash Service of Summons***

The trial judge denied the motion to quash on June 18, 2021. At oral argument the trial judge started by sharply questioning Lennar Title's counsel whether he knew what party he was representing:

> "THE COURT: Any other appearances?
>
> "[COUNSEL]: Yes, your honor. [Counsel] for defendant, North American Title Company, formerly known as North American Title Company, Inc. and CalAtlantic Title, Inc., and now known as Lennar Title, Inc.
>
> "THE COURT: Are you sure? Are sure, [Counsel]? I'm not hearing you, [Counsel].
>
> "[COUNSEL]: Yes. Am I sure?
>
> "THE COURT: Yes. Are you sure about all of those names? Are you sure you've got the right ones now or not? I just want to make sure.
>
> "[COUNSEL]: I believe I do, your Honor.
>
> "THE COURT: Well, you are not sure though; right? You just believe you do or are you sure 100 percent? [¶] It's not rhetorical, [Counsel] I need an answer.

---

**3**     To reiterate, the amended complaint did not contain causes of action alleging fraudulent transfer or alter ego liability as to Doma Title.

"[COUNSEL]:  Yes.  I'm appearing for defendant and real party North American Title Company formerly known as North American Title Company, Inc., CalAtlantic Title, Inc. and now known as Lennar Title, Inc.

"THE COURT:  Okay.  I've read all of your submissions.  The defendants, ***whoever they are calling themselves today*** as well as [Doma Title's] and the plaintiffs' responses."  (Emphasis added, unnecessary capitalization omitted.)

After addressing a delay involving an echo from the parties appearing remotely, the trial judge made the following statements.

"THE COURT:  All right.  [Counsel for Doma Title], I read your papers.  Are you submitting?

"[COUNSEL FOR DOMA TITLE]:  Your honor, unless the court has questions, I believe it's [indecipherable] appropriately.

"THE COURT:  Okay. All right.  So I had a lot to say but I'm going to cut it short.

"The only question for you[] that I have with the ***name game shell game that we are playing*** is you purport to represent the, quote, new North American Title[,] Inc., formerly known in one part of the pleading as States Title FTS Title Company, but in another part of the pleading you say that they were formerly States Titel, T-I-T-E-L, Co. FTS.

"I'm just curious.  Are those two different companies?  Is that a proofreading oversight or ***more trickery***, which one?

"[COUNSEL FOR DOMA TITLE]:  Well, it's not trickery.  It would be a proofreading error if it's there.

"THE COURT:  Oh, it's there because I read all of the papers very carefully.  Okay.  That was the only question I had.

"I think the plaintiff encapsulated the posture of this case in one of the sentences that I read in their papers and I'll quote it.

" 'After becoming aware that defendants began ***scheming*** to prevent collection of the forthcoming judgment ***through a corporate game of three-card monte***, plaintiffs filed the motion to reopen discovery to ensure the pleadings correctly

10.

identify the current name of the plaintiffs' employer that has defended the case since 2007.'

"And that is still where we find ourselves, *a game of name change shell game*. We're rapidly approaching the five-year anniversary not of the case but from the end of the trial and the issuance of the statement of decision.

"The trial began nearly six years ago on September 21st, 2015; stipulated rested as of March 4th, 2016; and defendants *in whatever name they now like to be known, it's been consistently morphing since the end of trial, they've tried every device to delay the inevitable. They've tried every device to make sure that they evade the payment of their obligation*.

"You can go through *all of the games that were played* with the referee, the writ and then the appeal and just quoting from back in 2017 from the [C]ourt of [A]ppeal about one of the gamesmanships with the referee:

" 'Here, the cost order was not a grant of an injunction. Instead, it was simply an order that NATC pay the reference fees as part of the trial court's power to order a nonconsensual reference to determine the restitution, bold underlined, to which the class members are entitled. Characterizing the cost order as an injunction is just a creative way of trying to shoehorn such an order into something otherwise appealable. In sum, the cost order is not an appealable -- is not appealable as either a collateral or an injunction.' And it goes on and on.

"The motion to quash is denied. Response due in five days. Thank you." (Emphasis added, unnecessary capitalization omitted.)

***Doma Title Petitions for Writ Relief from Denial of Motion to Quash***

Doma Title sought relief from the order denying the motion to quash by filing a petition for writ of mandate with this court. On September 16, 2021, this court issued a peremptory writ of mandate finding the superior court lacked jurisdiction over Doma Title until and unless service was effectuated or waived and ordered the superior court to vacate its order denying the motion to quash. It was explained how " 'in the ordinary civil action, unless there be other statutory authority, the issuance and service of

11.

summons is a prerequisite to acquisition of jurisdiction.' " (*North American Title Co. v. Superior Court* (Sep. 16, 2021, F082969) [nonpub. opn.], p. 7, citing *Pousson v. Superior Court of San Diego County* (1958) 165 Cal.App.2d 750, 752.) We described how the class representatives' assertion Doma Title had effectively been a party to the litigation since its inception conflicted with foundational rules of California corporation law. (*North American Title Co. v. Superior Court* (Sep. 16, 2021, F082969) [nonpub. opn.], p. 9.) Under the Corporations Code, the name of a corporation is set forth in the company's articles of incorporation filed with the Secretary of State. (*North American Title Co. v. Superior Court* (Sep. 16, 2021, F082969) [nonpub. opn.], p. 8.) "[A] copy of the articles of a corporation duly certified by the Secretary of State *is conclusive evidence* of the formation of the corporation and prima facie evidence of its corporate existence." (*Ibid.*; citing Corp. Code, § 209, italics added.) Based on the articles of incorporation filed with the Secretary of State, we held Lennar Title and Doma Title were separate legal entities under California law with different corporate entity numbers, different corporate officers, and different agents for service of process. (*North American Title Co. v. Superior Court* (Sep. 16, 2021, F082969) [nonpub. opn.], pp. 9-10.) To the extent the trial judge made legal and factual findings Lennar Title and Doma Title are the same legal entity, we held such findings "cannot stand, regardless of the standard of review." (*Id.* at p. 10.)

### Service on Doma Title and Attempts to Disqualify the Trial Judge

On September 23, 2021, class representatives filed, and the trial judge granted, an ex parte request to issue summons and conduct a deposition of the person most knowledgeable for Doma Title. Class representatives served Doma Title with summons and the operative complaint on September 27, 2021, and immediately propounded discovery.

12.

A week later, on October 4, 2021, Doma Title filed a peremptory challenge to disqualify the trial judge under section 170.6. He denied the challenge as untimely on October 6, 2021. On October 21, 2021, Doma Title submitted a petition for writ of mandate to this court contending the trial judge erred in denying its peremptory challenge under section 170.6.

While the writ was pending, the parties continued to prosecute the underlying litigation in the superior court. On October 29, 2021, class representatives filed an ex parte motion for several forms of relief. They noted Doma Title's corporate status had been listed as suspended and requested all filings made by Doma Title from the time of the suspension be struck. They also sought to compel the deposition of Doma Title's person most knowledgeable. On the same date, Doma Title filed a verified statement to disqualify the trial judge for cause. Doma Title alleged " 'a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial,' " and " 'the judge has displayed bias or prejudice toward a lawyer in the proceeding' " under section 170.1, subdivision (a)(6)(A)(iii) and (a)(6)(B). Specifically, Doma Title claimed the trial judge had prejudged its liability and evinced animus against it based on the comments made at the hearing on the motion to quash.

The trial judge issued a verified answer to Doma Title's statement of disqualification. He proffered his explanations regarding his repeated comments defendants were engaging in a " 'shell game' " and a " 'corporate game of three-card monte.' " He did not deny making the comments. Instead, he provided his reasoning, "[i]t appeared that the changing of names – and potentially corporate parties five years post statement of decision and pre-entry of judgment – was being employed 'by DEFENDANT' (NATC) to avoid what everyone now knew would be a judgment in the tens of millions of dollars when judgment finally entered." (Emphasis in original; fn. omitted.) Additional statements in the answer clarified the comments were directed not

13.

at Doma Title, but rather at petitioner - Lennar Title. "[Doma Title's counsel] knew that this court's comment about a shell game was directed at [Lennar Title] and could not have been directed at Doma because at the time of the hearing, the corporation 'Doma Title of California, Inc.' *did not exist*." "Doma was never mentioned as Mr. Gilmore stated in his verified challenge. Also, his statement is misleading because not only was this judge expressly QUOTING the Plaintiffs papers, he was CLEARLY referring to the trial defendant attempting to avoid the payment of the judgment award, not some nascent corporation."

The trial judge did not address or otherwise provide a defense to his allegations of trickery, scheming, or gamesmanship on behalf of defendants. Rather, he provided the following statement: "This responding judge respectfully submits that the reasonable person – aware of this judge's 11+ year history on this case as recounted above, as well as his character and reputation for impartiality – would not question his impartiality."

For reasons unknown to this court, Doma Title's statement for disqualification was not immediately reviewed by another judge. Nearly two months later, on December 29, 2021, Doma Title filed a supplemental verified statement of disqualification and request for assignment of a judge by the Judicial Council. Doma Title explained in the supplemental statement it obtained a certificate of revivor from the California Franchise Tax Board thereby relieving it of its corporate suspension on November 18, 2021.[4]

*Dismissal of Doma Title*

On January 4, 2022, after spending a year and a half to add Doma Title to the litigation, class representatives provided notice they intended to dismiss Doma Title without prejudice and have the trial judge declare Doma Title's pending request for

---

[4]     "[T]he revival of corporate powers retroactively validates any procedural steps taken on behalf of the corporation in the prosecution or defense of a lawsuit while the corporation was under suspension." (*Tabarrejo v. Superior Court* (2014) 232 Cal.App.4th 849, 862.)

14.

judicial disqualification as moot. Class representatives noted Doma Title was refusing to participate in discovery and intended to file a demurrer to seek its dismissal from the action. Doma Title planned to assert in its demurrer that the claims against it were barred by the statute of limitations, and as it did not exist as a corporate entity until 2018, the operative complaint failed to show it would be liable for wage and hour claims arising from the employment of class members prior to its existence. Acknowledging such disputes may take years to adjudicate, class representatives sought to dismiss Doma Title so that it could proceed to attempt to obtain a final judgment in the matter.

On January 6, 2022, this court issued an alternative writ order directing the superior court to either vacate its October 6, 2021 order denying the motion to disqualify under section 170.6 or show cause why the requested relief should not issue. The order directed respondent superior court to inform this court of its decision within 30 days.

On January 20, 2022, class representatives filed a request for a continuation of the hearing in the superior court to discuss how to respond to the alternative writ order. Noting it may be problematic for the trial judge to rule on the request for dismissal of Doma Title in light of the pending disqualification motions, class representatives set an ex parte hearing in front of a different superior court judge to address the dismissal request. The trial judge granted the continuance and set the hearing on the alternative writ order on January 28, 2022. Class representatives proceeded to file the ex parte request to dismiss Doma Title before a different judge noting the purpose of the dismissal was to render the peremptory challenge filed by Doma Title and the resulting order to show cause moot. Doma Title did not oppose its dismissal from the action, but Lennar Title provided objections to the request. It noted class representatives had not provided a showing of irreparable harm or immediate danger to have the motion be heard ex parte, let alone before a judge not assigned to the matter. On January 25, 2022, the other judge dismissed Doma Title from the action without prejudice.

Afterwards, the trial judge held the hearing on the alternative writ order. Referring to the dismissal of Doma Title, the trial judge found good cause not to vacate his order denying the peremptory challenge. In response, this court issued an order to show cause on February 9, 2022, and stayed the proceeding in the superior court pending determination of the writ proceeding.

On April 1, 2022, Kings County Superior Court Judge Randy Edwards, sitting by special assignment as a Judge of the Fresno County Superior Court, requested transcripts to review the request for disqualification for cause of the trial judge, and noted he would decide the matter within 15 days of receipt of the transcripts.

On June 28, 2022, this court issued its ruling denying the petition for writ of mandate seeking review of the denial of the peremptory challenge under section 170.6. (*Doma Title of California, Inc. v. Superior Court* (June 28, 2022, F083454) [nonpub. opn.].) We held the timeliness provision in section 170.6, subdivision (a)(2) provided that " '[i]n no event shall a judge ... entertain' a peremptory challenge after trial has commenced." (*Doma Title of California, Inc. v. Superior Court* (June 28, 2022, F083454) [nonpub. opn.], p. 2.) "[T]he fact Doma Title was a new party did not impact the application of the deadline imposed by section 170.6, subdivision (a)(2) that prohibits peremptory challenges after trial has commenced." (*Doma Title of California, Inc. v. Superior Court* (June 28, 2022, F083454) [nonpub. opn.], p. 15.)

In making the determination, this court noted "[n]othing in this opinion should be read as implying that these entities are, or are not, alter egos or that Doma Title is, or is not, a successor in interest liable for the debts of Former NATC/Lennar Title." (*Doma Title of California, Inc. v. Superior Court* (June 28, 2022, F083454) [nonpub. opn.], p. 5.) The order discharged the alternative writ as improvidently granted and ordered the stay be vacated upon the finality of the opinion. (*Id.* at p. 16.)

16.

On July 28, 2022, Judge Edwards denied the disqualification request without prejudice. The order explained the motion to disqualify was made moot by the dismissal of Doma Title from the action. Since the dismissal was without prejudice, the denial of disqualification was likewise without prejudice should Doma Title again become a party to the proceeding at a time subsequent to the order.

### *Lennar Title Files Statement of Disqualification for Cause*

Having resolved Doma Title's motions to disqualify, class representatives filed a status conference statement requesting the trial judge enter judgment as soon as possible. Before any substantive hearings took place, on August 18, 2022, Lennar Title filed a verified statement to disqualify the trial judge for cause on the grounds that (1) "a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial," and (2) the judge has displayed "[b]ias or prejudice toward a lawyer in the proceeding." Lennar Title relied on the same comments as Doma Title, as well as statements in the trial judge's answer to Doma Title's statement of disqualification for cause explaining the comments were directed towards Lennar Title, not Doma Title.

On August 26, 2022, the trial judge issued the order striking Lennar Title's statement of disqualification that is subject to review in this petition. First, he held the statement was untimely. He noted the first comments which formed the basis of the statement of disqualification occurred two years earlier in June 2020. The trial judge found Lennar Title should not have waited to see if defendants would obtain a favorable ruling on Doma Title's statement of disqualification before filing its own statement of disqualification.

Next, the trial judge determined the statement of disqualification was properly stricken as a second and successive attempt to disqualify him for cause. (§ 170.4, subd. (c)(3).) He found Lennar Title and Doma Title to be "inextricably intertwined" and therefore the same party for purposes of the disqualification statute. Finally, the trial

17.

judge explained the comments were assertions of his legitimate frustrations, or his views of legal or factual issues in the case, and were not sufficient to show bias or prejudice on his behalf. In striking the statement, he concluded "a reasonable observer could conclude that delay was the goal."

Lennar Title filed the instant petition for writ of mandate with this court on September 9, 2022. On October 3, 2022, Lennar Title moved for expedited resolution of the petition. The motion explained judgment had been entered on August 31, 2022, and Lennar Title's motions for a new trial and to vacate the judgment were set for hearing on November 4, 2022. If it was to be determined the trial judge should be disqualified, Lennar Title argued it would be a waste of time and resources to allow post-judgment motions to proceed.

On October 21, 2022, this court issued an order to show cause, ordered briefing, and stayed further proceedings pending determination of this writ. Class representatives filed a return on November 21, 2022, and Lennar Title filed its reply on December 21, 2022. At the request of class representatives, supplemental briefing was provided.[5] Upon conducting a preliminary review of the petition, this court ordered a second round of supplemental briefing. As briefing is complete and oral argument was held on April 20, 2023, the matter stands ready for adjudication.

## DISCUSSION

### I.    Standards of Review

The question whether a statement of disqualification was filed " 'at the earliest practicable opportunity after discovery of the facts constituting the ground for

---

[5]    Both class representatives and Lennar Title filed requests for judicial notice along with their respective supplemental briefs. The requests are for records filed in the superior court action and this writ proceeding and are properly subject to judicial notice under Evidence Code section 452, subdivision (d). The requests for judicial notice are hereby granted.

18.

disqualification,' as required by section 170.3, subdivision (c)(1), requires an evaluation of undisputed facts in light of an objective standard and, therefore, is subject to de novo review." (*Jolie v. Superior Court* (2021) 66 Cal.App.5th 1025, 1042 (*Jolie*).) Moreover, the core questions in this case involve statutory interpretation, including the meaning of the term " 'at the earliest practicable opportunity' " and the interplay of various provisions of sections 170.3 and 170.4 pertaining to timeliness and waiver. These are questions of statutory interpretation to be considered de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71; *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.)

To the extent portions of this opinion review the merits of the claims of bias or the appearance of lack of impartiality, the de novo standard also applies. "The weight of authority supports that where, as here, the relevant facts are undisputed, a de novo review standard applies to a section 170.1(a)(6)(A)(iii) challenge to a claimed appearance of partiality." (*Wechsler v. Superior Court* (2014) 224 Cal.App.4th 384, 391-392 (*Wechsler*).)

As writ review is the exclusive method for seeking review of claims of statutory disqualification, the writ cannot be discretionarily denied. "The discretionary aspect of writ review comes into play primarily when the petitioner has another remedy by appeal and the issue is whether the alternative remedy is adequate." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113-114.) "When an extraordinary writ proceeding is the only avenue of appellate review, a reviewing court's discretion is quite restricted." (*Ibid.*) Where a petitioner has a "substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain, speedy and adequate remedy in the ordinary course of law, [petitioner] is entitled as a matter of right to the writ, or perhaps more correctly, in other words, it would be an abuse of discretion to refuse it." (*Ibid.*) Section 170.3, subdivision (d) states, "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ

of mandate from the appropriate court of appeal sought only by the parties to the proceeding." This court's ordinary authority to rely on discretionary reasons to decline review is therefore constrained.

## II. History of the Right to Strike Statements of Disqualification

### A. Enactment and Liberal Construction of Disqualification Statute

For over 130 years, section 170 has entitled parties to seek judicial disqualification. (See generally, *Howell v. Budd* (1891) 91 Cal. 342, 353 (*Howell*).) Since its enactment, the Supreme Court has invariably held the disqualification statute should be broadly construed. (§ 4 [The provisions of the Code of Civil Procedure "are to be liberally construed, with a view to effect its objects and to promote justice."]; *Howell*, *supra*, 91 Cal. at p. 353; *People v. Thomas* (1972) 8 Cal.3d 518, 520 (*Thomas*).)

The broad application of the statute had an important purpose – to instill public confidence in the judiciary. " 'A sound public policy, which is interested in preserving every tribunal appointed by law from discredit, imperiously demands its observance.' " (*Meyer v. San Diego* (1898) 121 Cal. 102, 106 (*Meyer*).) " 'It should be the duty and desire of every judge to avoid the very appearance of bias, prejudice, or partiality.' " (*Ibid*.) "The object of section 170 'is not only to guard jealously the actual impartiality of the judge but also to insure public confidence.' " (*Thomas*, *supra*, 8 Cal.3d at p. 520.) " 'It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community." (*Lindsay-Strathmore Irrigation Dist. v. Superior Court of Tulare County* (1920) 182 Cal. 315, 334 (*Lindsay-Strathmore Irrigation Dist.*) ["[I]t is of great importance that the courts should be free from reproach or the suspicion of unfairness."].)

### B. Judicially Created Right to Strike Insufficient and Untimely Statements of Disqualification

Over time, certain limitations have been placed on the right to seek judicial disqualification, including the right of the trial judge to strike insufficient statements of

disqualification. "It is true a judge has no jurisdiction to pass upon his own disqualification, but where the statement of disqualification is legally insufficient and is based on frivolous grounds, he may disregard it or strike it from the record." (*Neblett v. Pacific Mut. Life Ins. Co.* (1943) 22 Cal.2d 393, 401.) "A statement that contains nothing but conclusions and sets forth no facts constituting a ground of disqualification may be ignored or stricken from the files by the trial judge." (*People v. Sweeney* (1960) 55 Cal.2d 27, 35.) "Where the statement is insufficient the judge can so determine, whereupon the procedure provided by section 170 is not applicable." (*Ibid.*)

The right of trial judges to strike untimely statements of disqualification arose after the Legislature amended section 170 in 1927 to require statements of disqualification be filed at the " 'earliest practicable opportunity.' " (*Caminetti v. Pacific Mut. Life Ins. Co.* (1943) 22 Cal.2d 386, 390 (*Caminetti*). In *Caminetti*, the Supreme Court held parties could waive the right to seek disqualification due to dilatory conduct. "While the 1927 amendment does not specify in so many words a penalty for failure to urge disqualification at the 'earliest practicable opportunity,' the intention is clear that failure to comply with the provision constitutes a waiver. Any other construction would render the amendment ineffective." (*Caminetti, supra*, 22 Cal.2d at p. 391.) In construing its application, the Supreme Court drew the distinction that section 170 only allowed for waiver of certain grounds of disqualification for untimeliness. At the time *Caminetti* was decided, the Legislature had not provided for written waiver where disqualification was based on the judge being an interested party to the litigation or if the judge was biased or prejudiced. (*Caminetti*, at pp. 388-389.)

## C. 1981 Amendments Remove Ability to Strike Statements of Disqualification

In 1981, section 170 was amended to prevent trial judges from striking statements of disqualification under any circumstance. (Stats., 1981, ch. 255, § 1.) Under the 1981

21.

amendment, the sufficiency of the statement of disqualification, which the trial judge could previously review, "must now clearly be referred to another judge." (*Penthouse International, Ltd. v. Superior Court* (1982) 137 Cal.App.3d 975, 980 (*Penthouse*).) Proponents of the legislation argued "that in order to insure both propriety and the appearance of propropriety [*sic*], no judge, including those from single judge courts, should make a ruling on *any* matter dealing with his or her disqualification." (*Id.* at p. 981.)

The State Bar of California provided a statement justifying the amendment, observing, " '[this] anomalous case law creates substantial potential for impropriety and for the appearance of impropriety. It permits a challenged judge to totally avoid the disqualification hearing and, in essence, to rule upon his disqualification, thereby leaving the party purporting to be aggrieved to the uncertain remedy of a prerogative writ.' " (*Penthouse*, *supra*, 137 Cal.App.3d at p. 981.) " 'The proposed amendment eliminates the anomaly and requires that all issues concerning disqualification for cause be determined by another judge.' " (*Ibid.*)

### D. Major Revisions and Modernization of Section 170 in 1984

Not long thereafter, the entire statutory framework for disqualifying judges for cause was revised and modernized. In 1984, Senate Bill No. 1633 (1983-1984 Reg. Sess.) (Senate Bill No. 1633) was enacted, revising section 170, and adding sections 170.1 through 170.5 to the Code of Civil Procedure. Relevant here are two major revisions to the procedural framework for disqualification. First, the Legislature reinstituted the right of trial judges to strike untimely and legally insufficient statements of disqualification. Section 170.4, subdivision (b) states: "[I]f a statement of disqualification is untimely filed or if on its face it discloses no legal grounds for disqualification, the trial judge against whom it was filed may order it stricken." (§ 170.4, subd. (b).)

Deciding whether judges should be provided authority to strike statements of disqualification was a contentious issue. For example, Professor Preble Stoltz, Chair of the State Bar Committee on the Administration of Justice, noted:[6] "To my mind there is a real danger that the wrong kind of judge will overreach any authority he may have to strike." (Prof. Preble Stolz, State Bar Com. on the Admin. of Just., letter to Richard Thomson, Chief Consultant, Sen. Com. on Judiciary, Apr. 18, 1983.) However, the California Judges Association expressed countervailing concerns that judges would be unable to quickly address the large number of frivolous attempts to disqualify judges. "[F]rivolous challenges from criminal defendants representing themselves are a serious and growing problem which wastes a significant amount of judicial time and money." (Sen. Barry Keene, Chairman, Sen. Com. on Judiciary, letter to Gov. George Deukmejian, Sep. 6, 1984.)

The second significant change was creating a broader, more objective standard for showing bias and prejudice. (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 103 (*United Farm Workers*).) "This subdivision changes the law in that the previous corresponding statute, section 170, subdivision (a)(5) …, which could be read as applying to the appearance of bias, had been construed to require bias in fact." (*Ibid.*) The new standard requires proving "A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii).) "The reason given for the change is the difficulty in showing that a judge is biased unless the judge so admits. In addition, public perceptions of justice are not

---

[6]     This letter was found in the legislative history to Senate Bill No. 598 (1983-1984 Reg. Sess.). As the Supreme Court described, Senate Bill No. 598 (1983-1984 Reg. Sess.) "was not enacted, but the measure subsequently was reintroduced, with modifications not relevant here, as Senate Bill No. 1633 (1983-1984 Reg. Sess.), which was enacted into law." (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1067, fn. 5 (*Curle*).)

23.

furthered when a judge who is reasonably thought to be biased in a matter hears the case." (*United Farm Workers* at p. 103.) "The standard for disqualification … is fundamentally an objective one. It represents a legislative judgment that due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias. Rather, if a reasonable man would entertain doubts concerning the judge's impartiality, disqualification is mandated." (*Id.* at p. 104.)

### E. 1990 Amendments Prohibit Waiver for Bias or Prejudice

Whereas the former version of section 170, as interpreted by *Caminetti*, only allowed for waiver of certain grounds for disqualification, the revised statutes did not provide any limitation at first. In 1990, the Legislature amended section 170.3, subdivision (b) in Senate Bill No. 2316 (1989-1990 Reg. Sess.) (Senate Bill No. 2316) to add subdivision (b)(2). It states, "[t]here shall be no waiver of disqualification where the basis therefor is either of the following: [¶] (A) The judge has a personal bias or prejudice concerning a party. [¶] (B) The judge served as an attorney in the matter in controversy." (*People v. Barrera* (1999) 70 Cal.App.4th 541, 547 (*Barrera*); Stats. 1990, ch. 910, § 1, pp. 3857-3859.) " ' "The new language helps assure that even the shadow of bias is kept out of our courts, and provides useful conformity between the judiciary's self-imposed ethical guidelines and the law." ' " (*Barrera*, *supra*, 70 Cal.App.4th at p. 550.)

## III. Analysis

### A. Timeliness and Waiver of Statement of Disqualification

Petitioner contends its statement of disqualification was presented at the earliest practicable opportunity as it was not evident the judge was unable to be impartial until the cumulative impact of his comments were taken into account. Additionally, petitioner contends any delay in filing the statement was attributable to review of the statements of

24.

disqualification from Doma Title. During much of the time in consideration this court had stayed the superior court proceeding to review Doma Title's peremptory challenge under section 170.6. While Doma Title's statement for disqualification was under review, the trial judge likely had no authority to act. (See § 170.4, subd. (d) ["[A] disqualified judge shall have no power to act in any proceeding after his or her disqualification or after the filing of a statement of disqualification until the question of his or her disqualification has been determined."].) The trial judge disagreed and struck the statement of disqualification as untimely finding petitioner had impliedly waived the right to seek disqualification. As explained below, based on the plain meaning of section 170.3, subdivision (b)(2), the developed body of caselaw discussing waiver as applied to statements of disqualification, and the fundamental guiding principles put in place to protect the parties' and the public's confidence in the judiciary, disqualification based on the judge having personal bias or prejudice shall not be subject to waiver based on failing to present a statement at the earliest practicable opportunity under subdivision (c)(1).

Our primary task "in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent." (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.) In doing so, we give the words "their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose." (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529.) " 'If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs.' " (*Curle*, *supra*, 24 Cal.4th at p. 1063.) Likewise, if the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts. (*Ibid.*) As part of this process, " ' "[every] statute should be construed with reference to the whole system

25.

of law of which it is a part so that all may be harmonized and have effect." ' " (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 610.)

In addition to applying the settled principles of statutory construction, we must consider the Supreme Court's admonitions that the disqualification statutes "should not receive a technical or strict construction, but rather one that is broad and liberal" (*North Bloomfield Gravel Mining Co. v. Keyser* (1881) 58 Cal. 315, 322) and are "to be liberally construed, with a view to effect its objects and to promote justice." (Civ. Code, § 4.)

**B.      Prohibition on Waiver of Claims of Doubts as to Impartiality**

In its statement of disqualification, Lennar Title relies on the grounds set forth in section 170.1, subdivision (a)(6)(A)(iii), "A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial" and subdivision (a)(6)(B), "Bias or prejudice toward a lawyer in the proceeding." Noticeably, section 170.3, subdivision (b)(2)(A) uses different language. It states there shall be no waiver of disqualification if "[t]he judge has a personal bias or prejudice concerning a party." (*Fletcher v. Commission on Judicial Performance* (1998) 19 Cal.4th 865, 885.) Here, there is no concern whether section 170.3, subdivision (b)(2)(A) applies because petitioner expressly makes such an assertion. It claims "[t]he Judge has displayed bias and prejudice against Lennar Title." Nonetheless, the arguments set forth in petitioner's statement of disqualification focus on the operative legal standard whether there are doubts the judge would be able to be impartial as "[a] party moving for disqualification need not show actual bias because the Legislature sought to guarantee not only fairness to individual litigants, but also ' "to ensure public confidence in the judiciary" ' [citation], which ' " 'may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted.' " ' " (*Wechsler*, *supra*, 224 Cal.App.4th at p. 390.) We therefore address whether the prohibition on waivers of disqualification as to claims the judge has a

26.

personal bias or prejudice concerning a party under section 170.3, subdivision (b)(2)(A) applies to claims for disqualification under section 170.1, subdivision (a)(6)(A)(iii).

Six years prior to the amendment to add the language of section 170.3, subdivision (b)(2)(A), the Legislature amended the ground for disqualification from "When it is made to appear probable that, by reason of bias or prejudice of the justice or judge a fair and impartial trial cannot be had before that judge or justice" as stated in former section 170, subdivision 5 (Stats. 1984 ch. 193, § 9) to "a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial" as currently set forth in section 170.1, subdivision (a)(6)(A)(iii).

According to the legislative history, the language of section 170.3, subdivision (b)(2) was made to conform with the language of the Code of Judicial Ethics, Canon 3(C)(1)(a), as amended on September 18, 1989. (Sen. Bill Lockyer, Chairman, Sen. Com. on Judiciary, letter to Gov. George Deukmejian, Aug. 22, 1990 ["When the state's judiciary has agreed to impose more severe constraints on the entrance of even the appearance of bias into the courts, we should waste no time in putting the weight of statutory law behind the new restrictions. Conformity between the Code of Judicial Conduct and the Code of Civil Procedure is also helpful to judges and attorneys as they deal with these issues on a day to day basis."]; Cal. Code Jud. Ethics, canon 3(C)(1)(a).)

At the time the Legislature passed Senate Bill No. 2316, several things were known. It was clear the newly added waiver language of section 170.3, subdivision (b)(2) differed from the statutory language for disqualification which no longer required a showing of actual bias. Based on that knowledge, it is assumed the Legislature knew or should have known parties were likely to phrase claims of disqualification using the language of section 170.1, subdivision (a)(6)(A)(iii) stating one might doubt the judge's ability to be impartial, rather than affirmatively state the judge is biased or prejudiced.

Despite these differences, we hold the Legislature intended the prohibition of waiver under section 170.3, subdivision (b)(2) to apply to attempts to disqualify a judge on the grounds that "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial" under section 170.1, subdivision (a)(6)(A)(iii).

At the time of enactment of Senate Bill No. 2316, the commentary to the California Code of Judicial Ethics described the two standards as "comparable." (Cal Rules of Court, appen., div II, Canon 3.) Likewise, the definitions contained in the California Code of Judicial Ethics and Model Code of Judicial Conduct explain "impartial" as the inverse of "bias or prejudice." (Cal. Code Jud. Ethics, Terminology; ABA Model Code Jud. Conduct (2007), Terminology, p. 4.) " 'Impartial,' mean[s] the absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 389 (*Haworth*).)

In order to construe the statute broadly and liberally, commonsense dictates the prohibition on waiver under section 170.3, subdivision (b)(2) must apply to claims of disqualification under section 170.1, subdivision (a)(6)(A)(iii). A narrow reading of the statutory language of section 170.3, subdivision (b)(2) requiring parties to assert claims of actual bias or prejudice would render it inapplicable to many instances in which the Legislature intended it to apply. "[T]he Legislature does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so." (*Mendoza v. Nordstrom, Inc*. (2017) 2 Cal.5th 1074, 1087.) Further, such an interpretation aligns with the intent of the Legislature as section 170.3, subdivision (b)(2) was enacted to "assure that even the shadow of bias is kept out of our courts." (*Barrera*, *supra*, 70 Cal.App.4th at p. 550.) Accordingly, the prohibition on waiver under section 170.3, subdivision (b)(2) applies to claims of doubts to the ability of the judge to remain impartial under section 170.1, subdivision (a)(6)(A)(iii).

## C. Section 170.3(b)(2) Applies to Implied Waiver Due to Untimeliness

Having found the prohibition on waiver under section 170.3, subdivision (b)(2) applies to the claims of Lennar Title's statement of disqualification, we next review if the subdivision is limited to express written waiver, or also extends to implied waiver based on the failure to present the statement at the earliest practicable opportunity under section 170.3, subdivision (c)(1). We hold section 170.3, subdivision (b)(2) applies to implied waiver resulting from untimeliness.

We start with the plain language of the statute. Based on section 170.3, subdivision (b)(1) and (b)(3), there is no doubt subdivision (b)(2) applies to attempts to expressly waive disqualification in writing. Section 170.3, subdivision (b)(1) states: "A judge who determines himself or herself to be disqualified after disclosing the basis for his or her disqualification on the record may ask the parties and their attorneys whether they wish to waive the disqualification, *except where the basis for disqualification is as provided in paragraph (2).* A waiver of disqualification shall recite the basis for the disqualification, and is effective only when signed by all parties and their attorneys and filed in the record." (Emphasis added.) However, the language of section 170.3, subdivision (b)(2) unambiguously places no limitation on the type of waiver, setting forth "[t]here shall be *no waiver* of disqualification." (Emphasis added.) Had the Legislature wanted to limit the application of section 170.3, subdivision (b)(2) to express waiver, it could have included clarifying language to that effect. It did not. Moreover, for 50 years prior to the enactment of Senate Bill No. 2316, California courts had consistently based the denial of untimely statements of disqualification on a theory of waiver.[7] (See

---

[7] Prior caselaw has used the term waiver, but the doctrine being applied is one of forfeiture. (*People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 ["[T]he terms 'waiver' and 'forfeiture' long have been used interchangeably."]; (*Goodwin v. Comerica Bank, N.A.* (2021) 72 Cal.App.5th 858, 867, fn. 8.) "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " (*United States v. Olano*

*Caminetti*, *supra*, 22 Cal.2d at p. 391 ["While the 1927 amendment does not specify in so many words a penalty for failure to urge disqualification at the 'earliest practicable opportunity,' the intention is clear that failure to comply with the provision constitutes a waiver."]; *Sacramento & San Joaquin Drainage Dist. v. Jarvis* (1959) 51 Cal.2d 799, 801 ["where an objection to the judge on the ground of his disqualification was not made at the earliest practicable opportunity, it was waived by the conduct of the parties"]; *Mayo v. Beber* (1960) 177 Cal.App.2d 544, 550; *People v. Pratt* (1962) 205 Cal.App.2d 838, 843; *Muller v. Muller* (1965) 235 Cal.App.2d 341, 345 ["[T]he waiver by written stipulation provided for in subdivision 3 does not constitute the exclusive method of waiver, but that a waiver by conduct may occur where the disqualification is not urged at the ' "earliest practicable opportunity" ' as provided in section 170."]; *Shakin v. Board of Medical Examiners* (1967) 254 Cal.App.2d 102, 115-116; *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 838 ["[P]laintiff waived the disqualification by his failure to urge it in the manner and at the time required by the statute."]; *Develop-Amatic Engineering v. Republic Mortg. Co.* (1970) 12 Cal.App.3d 143, 150; *People v. Oaxaca* (1974) 39 Cal.App.3d 153, 163; *Lagies v. Copley* (1980) 110 Cal.App.3d 958, 966 [disapproved on other grounds in *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 738, fn. 23.) Likewise, cases issued after 1990 still rely on implied waiver as the basis for striking untimely statements of disqualification. (See e.g., *In re Steven O.* (1991) 229 Cal.App.3d 46, 54; *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1337 (*Tri Counties Bank*) ["[A] failure to comply constitutes forfeiture or an implied waiver of the disqualification."]; *Magana v. Superior Court* (2018) 22 Cal.App.5th 840, 856 (*Magana*); *Jolie*, *supra*, 66 Cal.App.5th 1025, 1042.)

---

(1993) 507 U.S. 725, 733.)  While forfeiture may be the technically correct term, to remain consistent with existing caselaw, we will continue to use the term waiver.

" '[T]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes " 'in the light of such decisions as have a direct bearing upon them.' " ' " (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 146 [citing *People v. Overstreet* (1986) 42 Cal.3d 891, 897].) At the time the Legislature amended section 170.3 in 1990 to prevent waiver of disqualification based on personal bias or prejudice, there was a well-established body of law based on Supreme Court precedent holding the untimely presentation of a statement of disqualification results in waiver. The Legislature's determination to place no limiting language on the prohibition of waiver in section 170.3, subdivision (b)(2) despite well-established caselaw developing the doctrine of implied waiver, shall be interpreted to indicate its intent to prohibit all forms of waiver, including implied waiver due to untimeliness.

This interpretation aligns with the purpose of the amendments to assure that even the shadow of bias is kept out of California courts and conforms with prior statutory language and judicial construction. To protect public confidence in the judiciary, certain grounds of disqualification have historically been too important to waive. (*Muller v. Muller*, *supra*, 235 Cal.App.2d at p. 345, fn. 4 ["It should be here noted that in *Caminetti* it was held that the disqualification provided for in subdivision 1 of section 170 relating to a personal interest of a judge in litigation cannot be waived since it was intended to protect the state and judiciary as well as the parties to the suit."].) While *Caminetti* focused on subdivision 1 of former section 170, subdivision 5 of former section 170 regarding disqualification for bias and prejudice also had a no waiver provision. There was a six-year period where no statutory language existed to prevent waiver of claims of disqualification due to bias or prejudice. But for over the last three decades, the express language of section 170, subdivision (b)(2) and the relevant legislative history thereto makes clear a claim for bias or prejudice is now "unwaivable." (*Hayward v. Superior*

*Court* (2016) 2 Cal.App.5th 10, 50.)  There is nothing controversial about efforts to eliminate bias and prejudice from the courts, and these goals have been expressed by the Supreme Court for well over a century.  (*Lindsay-Strathmore Irrigation Dist.*, *supra*, 182 Cal. at p. 334 ["It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community."].)  Finally, it would be incongruent to prohibit express waiver of certain grounds of disqualification but allow for implied waiver of the same grounds should a party inadvertently wait too long to file a statement of disqualification.  Having interpreted section 170.3, subdivision (b)(2) to apply in cases of both express and implied waiver, we hold as a matter of law the trial judge lacked authority to strike the statement of disqualification based on personal bias or prejudice as untimely.

Although judges are unable to strike statements of disqualification for personal bias or prejudice as untimely, it is unlikely to cause issues for which the implied waiver doctrine was created in the first place.  The primary concern was parties would take advantage of the process by presenting claims of disqualification after obtaining an unfavorable result on a motion or at trial to attempt to vacate the unfavorable ruling after the fact.  (*Caminetti*, *supra*, 22 Cal.2d at p. 392; *Rohr v. Johnson* (1944) 65 Cal.App.2d 208, 212 ["A party should not be allowed to gamble on a favorable decision and then raise such an objection in the event he is disappointed in the result."].)  If a party is truly concerned the trial judge lost his or her objectivity, there would be no incentive to wait to raise the issue of disqualification until after obtaining a ruling, as the party would be under no illusion the judge would provide a favorable ruling.  Second, the provisions of section 170.4, subdivision (c) provides further safeguards.  It allows a trial or hearing to continue regardless if a statement of disqualification has been filed less than 10 days before the commencement of said hearing or trial.  (§ 170.4, subd. (c)(1)-(2).)  Even though not subject to waiver for untimeliness, statements of disqualification for personal

32.

bias or prejudice filed on the eve of trial or hearing would not prevent the trial from proceeding. Third, the trial judge still has authority to strike statements as insufficient (as explained *ante*) or as successive statements failing to raise new facts. (§ 170.4, subds. (b), (c)(3).)

Senate Bill No. 2316 was enacted to be operative in 1990, but no opinion has addressed its applicability on implied waiver due to untimeliness. At least one opinion appears to have been issued after enactment but addressed events occurring before it was in effect. (See *In re Steven O.*, *supra*, 229 Cal.App.3d at p. 54; *Barrera*, *supra*, 70 Cal.App.4th at p. 549, fn. 3.) Other opinions did not address waiver for various reasons, including finding the statement of disqualification was timely filed. (See *People v. Scott* (1997) 15 Cal.4th 1188, 1206 [failure to file statement of disqualification]; *Urias v. Harris Farms* (1991) 234 Cal.App.3d 415, 424 [finding statement timely]; *Sincavage v. Superior Court* (1996) 42 Cal.App.4th 224, 231-232 [finding statement timely]; *Magana*, *supra*, 22 Cal.App.5th at p. 856 [while stating statement was untimely, it appears the court relied on other grounds including insufficiency and being a second petition without alleging facts suggesting new grounds for disqualification]; *Jolie*, *supra*, 66 Cal.App.5th at pp. 1042-1043 [finding statement timely].) Only one opinion appears to have found a statement of disqualification alleging a nonwaivable ground under section 170.3, subdivision (b) as impliedly waived. (See *Tri Counties Bank, supra,* 167 Cal.App.4th at p. 1337.)

### D. Additional Arguments Alleging Implied Waiver

Class representatives argue Lennar Title's actions to continue to litigate in the superior court should be considered additional grounds for implied waiver. Specifically, class representatives point to Lennar Title's objecting to the language of the proposed judgment and perfecting an appeal from the judgment. Class representatives rightfully acknowledge filing a notice of appeal was necessary for Lennar Title to "preserve [its]

33.

rights in case this Petition is denied," but argue any action beyond seeking to stay the underlying proceeding and appeal show Lennar Title intended to waive its right to seek disqualification under section 170.3.

This argument is simply dispatched based on the interpretation of the plain language of section 170.3 already performed in this opinion. Section 170.3, subdivision (b)(2) states there shall be no waiver of disqualification if the judge has a personal bias or prejudice concerning a party. Waiver does not result from failing to file the statement of disqualification at the earliest practicable opportunity, nor does waiver result from the continued prosecution of the action pending adjudication of the disqualification proceeding. Section 170.3, subdivision (d) requires a party asserting disqualification to seek timely writ review, which Lennar Title has done. (*Barrera*, *supra*, 70 Cal.App.4th at p. 551-552 ["[T]he Legislature did not, in so amending section 170.3, subdivision (b), also amend section 170.3, subdivision (d), to provide for different means of review of the question of disqualification depending on which basis for disqualification is involved.… Thus … we conclude that a statutory claim -- regardless of its nature -- is governed by subdivision (d) and requires timely writ review."].)

As class representatives acknowledged, the failure of Lennar Title to continue to take necessary actions to protect its interests in the underlying proceeding, such as preserving its rights to appeal, could result in significant and irreversible consequences. Class representatives also contend Lennar Title's dual prosecution of this writ and the underlying proceeding is prejudicial and a waste of judicial resources. Yet, it was not Lennar Title's decision to make. Section 170.4, subdivision (c) states, "If a statement of disqualification is filed *after a trial or hearing has commenced* … the judge whose impartiality has been questioned may order the trial or hearing to continue, notwithstanding the filing of the statement of disqualification." (Emphasis added.) Under section 170.4, subdivision (c), the trial judge had the right to continue adjudicating

34.

the proceeding through trial, which might include the authority to enter judgment. But continuing to issue orders or rulings creates substantial risks those rulings will be vacated should disqualification result. Section 170.4, subdivision (c)(1) continues, "if it is determined that the judge is disqualified, all orders and rulings of the judge found to be disqualified made after the filing of the statement shall be vacated." "Because of this provision, judges generally avoid making *any* orders or rulings after a challenge for cause that could reasonably be considered meritorious is filed; they make orders or rulings only if the pending challenge is clearly specious." (Cal. Judges Benchbook: Civil Proceedings—Before Trial (CJER 2022) § 7.18, p. 559, emphasis in original.) The decision to cause concurrent litigation was the trial judge's, not Lennar Title's. Once judgment was entered, Lennar Title cannot be faulted or found to have impliedly waived its right to seek disqualification for taking action to preserve its right to appeal.

Separately, class representatives argue Lennar Title has not shown prejudice as it will have the opportunity to address any unfavorable rulings on post-judgment motions on appeal. Although true the underlying rulings are subject to appellate review, any challenge on appeal could not address statutory claims of disqualification under section 170 et seq. Rather, they would be limited to non-statutory claims of deprivation of the right to constitutional due process to a fair trial in a fair tribunal. (*People v. Chatman* (2006) 38 Cal.4th 344, 362; *In re Murchison* (1955) 349 U.S. 133, 136.) The constitutional standard is significantly more stringent. (*Caperton v. A. T. Massey Coal Co.* (2009) 556 U.S. 868, 877, 886-887 ["These are circumstances 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable' " and applies to cases involving "extreme facts."].) Despite class representatives' assertions otherwise, asking Lennar Title to forego its statutory claims of disqualification which were enacted to jealously guard the rights of

parties and guarantee public confidence in the judiciary (*Thomas*, *supra*, 8 Cal.3d at p. 520) would indeed be prejudicial.

Class representatives' contentions Lennar Title's continued acts to litigate the underlying proceeding during the pendency of this writ should result in implied waiver are rejected.

### E. Successive Statement Alleging No New Facts

The trial judge also based his order striking the statement of disqualification as a second or successive petition under section 170.4, subdivision (c)(3). Subdivision (c)(3) states, "A party may file no more than one statement of disqualification against a judge unless facts suggesting new grounds for disqualification are first learned of or arise after the first statement of disqualification was filed. Repetitive statements of disqualification not alleging facts suggesting new grounds for disqualification shall be stricken by the judge against whom they are filed." (§ 170.4, subd. (c)(3).) To reach his result, the trial judge considered Lennar Title and Doma Title to be the same party using the definition of party under section 170.1, subdivision (a)(8)(B)(ii). Section 170.1, subdivision (a)(8) governs issues of disqualification when the judge participates in activities such as a dispute resolution neutral. Under section 170.1, subdivision (a)(8)(A)(i), a judge shall be disqualified if "[t]he arrangement is, or the prior employment or discussion was, with a *party* to the proceeding." (§ 170.1, subd. (a)(8)(A)(i), emphasis added.) Further, section 170.1, subdivision (a)(8)(B) defines certain terms "*[f]or the purposes of this paragraph*" including the term "party." (*Id.*, subd. (a)(8)(B)(ii), emphasis added.) " 'Party' includes the parent, subsidiary, or other legal affiliate of any entity that is a party and is involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding." (*Ibid.*)

Using the above definition, the trial judge found the actions of Doma Title in filing the earlier statement of disqualification for cause should be imputed on Lennar Title as if

they were the same party. Applying the definition here was inappropriate for several reasons. First, the plain language of section 170.1, subdivision (a)(8)(B) limits the application to that paragraph, namely section 170.1, subdivision (a)(8). Further, the trial judge found Lennar Title and Doma Title were inextricably intertwined and therefore the same party for purposes of statements of disqualification. Even if the definition of party for disqualification of dispute resolution neutrals applied in this scenario to the ability to strike repetitive statements of disqualification under section 170.4, subdivision (c)(3), the definition of party is not met. Party means more than two business entities that are parent, subsidiary, or other legal affiliate of another business entity. (§ 170.1, subd. (a)(8)(B)(ii).) The entity must also be "involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding." (*Ibid.*)

The transaction, contract, or facts relevant to this proceeding involve whether Lennar Title properly compensated class members in its employ under relevant wage and hour laws during the time period ending in 2012. As Doma Title was not incorporated until January 23, 2018, it neither existed nor was involved in the employment of class members during the relevant period. "Had the Legislature intended to deem all affiliates of a named party under the judge disqualification and arbitral disclosure standards as parties, it could have achieved this objective by simply defining party to include, without qualification, the parent, subsidiary, or other legal affiliate of any entity that is a party. For the qualifying clause to have any meaning, it must be read to modify 'parent, subsidiary, or other legal affiliate.' It is this legal affiliate that must be 'involved in the transaction, contract, or facts that gave rise to the issues subject to the proceeding.' " (*Hayden v. Robertson Stephens, Inc.* (2007) 150 Cal.App.4th 360, 367, 368 ["the statute does not deem a corporation a party to the proceeding based on potential successor liability"].) Lennar Title and Doma Title are not the same party for purposes of section 170.4, subdivision (c)(3). Having never filed a prior statement of disqualification for

37.

cause, there was no legal basis to strike Lennar Title's statement as being a second or repetitive statement of disqualification.

Furthermore, while Doma Title had filed a prior statement of disqualification for cause raising similar concerns, it was never substantively reviewed on the merits. Section 170.4, subdivision (c)(3) provides trial judges the authority to strike repetitive statements of disqualification not alleging facts suggesting new grounds for disqualification based on the assumption the grounds for disqualification had previously been reviewed and deemed insufficient to warrant disqualification. Applying section 170.4, subdivision (c)(3) in a manner as to allow questions of disqualification to evade review is contrary to its intended purpose.[8]

### F. Sufficiency of the Statement of Disqualification

Lennar Title alleged its statement of disqualification was proper because a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial or, relatedly, the trial judge had expressed bias and prejudice against it and its counsel.

The question when addressing disqualification under section 170.1, subdivision (a)(6)(A)(iii) is not whether the judge "actually was biased or even whether he was likely to be impartial; those questions involve a subjective test that appropriately could be

---

[8] Although not at issue in this petition, we are compelled to note with concern the delay in adjudicating Doma Title's statement of disqualification. Doma Title filed its statement of disqualification on October 29, 2021, and the trial judge filed an answer to the statement on November 10, 2021. If the parties cannot agree upon a judge to hear the disqualification matter within five days, the Judicial Council shall select the judge as expeditiously as possible (§ 170.3, subd. (c)(5)), and any hearing in the disqualification matter is to be set as promptly as practicable. (§ 170.3, subd. (c)(6).) However, nearly five months later, on April 1, 2022, the appointed judge lacked the necessary transcripts to properly review the grounds of disqualification raised in the statement. Had the matter been handled more expeditiously, many of the concerns raised by Lennar Title may have already been addressed.

characterized as primarily factual.  The question here is how an objective, reasonable person would view [the judge's] ability to be impartial." (*Haworth*, *supra*, 50 Cal.4th at pp. 385-386.)  " 'The standard for disqualification provided for in subdivision (a)(6)(C)[(iii)] of section 170.1 is fundamentally an objective one.' " (*Jolie*, *supra*, 66 Cal.App.5th at p. 1039.)  " 'It represents a legislative judgment that due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias.  Rather, if a reasonable man would entertain doubts concerning the judge's impartiality, disqualification is mandated.  "To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person." ' " (*Id.* at pp. 1039-1040 (citing *United Farm Workers*, *supra*, 170 Cal.App.3d at p. 104.)  "[T]he reasonable person must be viewed from the perspective of the reasonable layperson, 'someone outside the judicial system,' because 'judicial insiders, "accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would." ' " (*Wechsler*, *supra*, 224 Cal.App.4th at p. 391; citing *In re Kensington International Limited* (3d Cir. 2004) 368 F.3d 289, 303.)  "Where, as here, the underlying events are not in dispute, disqualification on this ground becomes a question of law which this court may determine." (*Sincavage v. Superior Court, supra*, 42 Cal.App.4th at p. 230.)

The question at issue is not whether a person might reasonably entertain a doubt whether the trial judge would be able to be impartial.  It is whether the trial judge had authority to strike the statement as insufficient.  Under section 170.4, subdivision (b), a trial judge may strike a statement of disqualification "if on its face it discloses no legal grounds for disqualification." (§ 170.4, subd. (b).)  However, by its express terms, the

authority of the trial judge to strike under section 170.4, subdivision (b) is limited by the terms of section 170.3, subdivision (c)(5). That subdivision states, "A judge who refuses to recuse himself or herself shall not pass upon his or her own disqualification *or upon the sufficiency in law, fact, or otherwise, of the statement of disqualification filed by a party*." (§ 170.5, subd. (c)(5), emphasis added.)

In striking the statement of disqualification, the trial judge argued the statements were not disqualifying as they were statements of frustration (see *People v. Brown* (1993) 6 Cal.4th 322, 337), erroneous legal rulings (*Garcia v. Estate of Norton* (1986) 183 Cal.App.3d 413, 423), or the expression of a view on a legal or factual issue presented in the proceeding (§ 170.2, subd. (b)). By engaging in the ultimate determination whether the statements were legal findings or statements of frustration rather than statements indicating an appearance of impartiality, the trial judge was passing on the sufficiency in law or fact of the allegations presented in the statement of disqualification. In enacting section 170.4, subdivision (b), the Legislature provided trial judges limited authority to strike statements of disqualification that were facially insufficient or frivolous. By strictly limiting the ability of trial judges to strike only those statements which on their face disclose no legal grounds for disqualification, the Legislature was attempting to balance the need for prompt adjudication of frivolous statements of disqualification while limiting the "substantial potential for impropriety" created by allowing the challenged judge to strike statements to avoid review of the statement of disqualification by another judge. (*Penthouse*, *supra*, 137 Cal.App.3d at p. 981.)

Review of Lennar Title's statement of disqualification leaves little doubt it was facially sufficient. The verified statement is 19 pages long and is accompanied by the declaration of Lennar Title's counsel and 15 exhibits, totaling over 300 pages. The statement describes the trial judge's comments made during argument in detail, as well as provides pinpoint citations to the reporter's transcripts. Likewise, after setting forth the

relevant legal standards for review of questions of disqualification based on reasonable doubts concerning the judge's impartiality, Lennar Title engaged in a detailed discussion as to why the trial judge's disqualification was required in this case. Lennar Title summarized its argument in the following manner:

> "The comments that Lennar Title was participating in a " 'shell game' " to avoid the judgment show bias and prejudice, and would lead to a reasonable person to doubt whether the Judge can be impartial in further proceedings against Lennar Title. The Judge challenged counsel for Lennar Title about whether he knows who he represents and concluded, without evidence of any nature, briefing or hearing, that Lennar Title is engaged in a shell game, trickery, and an ongoing improper scheme to evade an " 'inevitable judgment.' " The Judge's hostility toward Lennar Title's legitimate efforts to bring issues before the Court of Appeal colors his decisions and will continue to bias the important post-trial decisions that he must make in this case. A reasonable person present in court would agree that the Judge has already prejudged that Lennar Title was engaged in some form of nefarious behavior in order to avoid paying a judgment that has not yet been entered. These preconceived opinions necessitate disqualification as a matter of law. [Citation.]

> "Furthermore, the Judge's Verified Answer in response to Doma's challenge for cause further confirms bias. The Judge's Verified Answer contends that the words he uttered at the June 18, 2021 hearing 'was CLEARLY referring to the trial defendant attempting to avoid the payment of the judgment award, not some nascent corporation.' [Citation.] A reasonable person would read this statement as meaning that the Judge had prejudged Lennar Title as attempting to avoid paying the judgment for unfounded, improper reasons."

The statement of disqualification was thorough and sufficient. (See contra, *Urias v. Harris Farms*, *supra*, 234 Cal.App.3d at p. 426 ["Mere conclusions of the pleader are insufficient."]; *Fine v. Superior Court* (2002) 97 Cal.App.4th 651, 667 ["Fine provided few facts in support of the allegations contained within his statement of disqualification. We conclude, therefore, that the statement of disqualification was properly stricken."].)

In addition to being facially sufficient, the claims presented in Lennar Title's statement were both substantial and concerning. The trial judge made repeated

41.

comments regarding how Lennar Title was "scheming," engaged in "trickery" and "gamesmanship," and their efforts to evade judgment were akin to "three card monte" and a "shell game." Class representatives had never alleged claims under the Uniform Voidable Transactions Act (Civ. Code, § 3439, et seq.), corporate successor in interest, or alter ego. Accordingly, questions regarding the alleged conduct were never before the trial judge for adjudication.[9] A judgment had not yet been entered at the time the comments were made, making the statements speculative. More importantly, the definition of each of the terms used by the trial judge infers improper motive and actions on behalf of Lennar Title. Scheming is defined as "given to forming schemes; especially: devious" (Merriam-Webster Dict. Online (2023) <https://www.merriam-webster.com/dictionary/scheming> [as of May 19, 2023]); trickery is "the practice of crafty underhanded ingenuity to deceive or cheat" (Merriam-Webster Dict. Online (2023) <https://www.merriam-webster.com/dictionary/trickery> [as of May 19, 2023]) or "[t]he use of subterfuge or stratagems to deceive, esp. to induce some action or statement by another" (TRICKERY, Black's Law Dictionary (11th ed. 2019)); gamesmanship is "the art or practice of winning games by questionable expedients without actually violating the rules; the use of ethically dubious methods to gain an objective" (Merriam-Webster Dict. Online (2023) <https://www.merriam-webster.com/dictionary/gamesmanship> [as of May 19, 2023]); and a shell game is a "thimblerig played especially with three walnut shells; fraud especially: a swindle involving the substitution of something of little or no value for a valuable item"

---

**9** Nor does it appear they ever will be. Class representatives have dismissed Doma Title from the action. Both parties also refer to the fact Lennar Title has posted an appeal bond in the superior court. By posting a bond in an amount at least one and a half times the judgment, enforcement of the judgment is stayed pending appeal. (See generally § 917.1.) Concerns whether Lennar Title is attempting to evade payment of the judgment appear unwarranted, and raise questions whether such concerns were ever warranted.

(Merriam-Webster Dict. Online (2023) <https://www.merriam-webster.com/dictionary/shell%game> [as of May 19, 2023].).

" 'Bias is defined as a mental predilection or prejudice; a leaning of the mind; "a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction." [Citation.] Bias or prejudice consists of a "mental attitude or disposition of the judge towards a party to the litigation." ' " (*In re Marriage of Lemen* (1980) 113 Cal.App.3d 769, 789.) The repeated use of the above terms could create the perception from a reasonable observer that the trial judge believed Lennar Title was engaged in deceptive and wrongful actions to evade the upcoming judgment.

Class representatives argue the statements are not the basis of disqualification as "[i]t shall not be grounds for disqualification that the judge … [h]as in any capacity expressed a view on a legal or factual issue presented in the proceeding." (§ 170.2, subd. (b).) It is not evident the comments relate to any legal or factual issues presented in the proceeding. The comments were made while ruling on a motion to quash due to lack of service of process and were not relevant to the determination of the motion. While it is possible to argue the comments were merely expressing a view in a legal proceeding, it is similarly possible to construe the comments as violative of section 170.1, subdivision (a)(6)(A)(iii) and Canon 3 of the Code of Judicial Ethics. (Rules of Ct., Canon 3(B)(5) ["A judge shall not, in the performance of judicial duties, engage in speech, gestures, or other conduct that would reasonably be perceived as (a) bias, prejudice, or harassment."].)

Hearing the comments, a reasonable observer may be concerned the trial judge was predisposed to decide future rulings unfavorably against Lennar Title, including pending post-trial motions. "Where a judge gratuitously offers an opinion on a matter not yet pending before him and thereby shows a bias or prejudice against a party, a writ of mandate will issue precluding the opining judge from hearing that matter." (*Pacific etc.*

43.

*Conference of United Methodist Church v. Superior Court* (1978) 82 Cal.App.3d 72, 84.) Based on the totality of the statements above, Lennar Title presented a colorable case and a fully informed, reasonable member of the public could entertain doubts the trial judge retained an appearance of being impartial. " 'The trial of a case should not only be fair in fact, but it should also appear to be fair. And where the contrary appears, it shocks the judicial instinct to allow the judgment to stand.' " (*Id.* at pp. 87-88.)

Based on the facts and arguments contained in Lennar Title's statement of disqualification, it is not tenable to hold that on its face it discloses no legal grounds for disqualification. Rather, the statement was sufficient and the issue of disqualification should have been reviewed on the merits by another judge. (§ 170.3, subd. (c)(5).)

### G.      Failure to Answer the Statement of Disqualification

Having found the order striking the statement of disqualification was improper and must be vacated, we turn to what should occur on remand. Upon reinstatement of the statement of disqualification, the trial judge shall be provided the remaining three days of the 10-day period to respond before being deemed to have consented to disqualification. (§ 170.3, subd. (c)(4).)

Striking a statement and filing an answer are not mutually exclusive; there is no "logical reason to prevent a judge from striking such a statement subsequent to filing an answer so long as it is done within the 10 days prescribed by the statute." (*PBA, LLC v. KPOD, Ltd.* (2003) 112 Cal.App.4th 965, 973.) The trial judge did not answer the statement within 10 days, but "upon striking the declaration, it no longer exist[ed] to be consented to or answered." (*Ibid.*) As the statement of disqualification effectively ceased to exist upon being stricken, it follows the 10-day deadline to file a consent or answer no longer continued to run.[10] Once the order striking the statement is vacated and

_____

[10]      See contra, *Lewis v. Superior Court* (1988) 198 Cal.App.3d 1101, 1104 ["We do not construe [section 170.4, subdivision (b)] as providing an exception to the automatic disqualification of a judge who fails to file an answer within 10 days as required by

the statement of disqualification is reinstated, the remaining period to respond under section 170.3, subdivision (c)(3) shall recommence. In this case, the trial judge struck the statement on the seventh day after it was served. Three days of the period remain.

"Once a statement of disqualification has been filed by a party, the judge has four options. The judge may: (1) request any other judge agreed upon by the parties to sit and act; (2) within 10 days, 'file a consent to disqualification'; (3) within 10 days file 'a written verified answer admitting or denying any or all of the allegations'; or (4) strike the declaration." (*PBA, LLC v. KPOD, Ltd.*, supra, 112 Cal.App.4th at p. 972, fns. omitted.) Having determined striking the statement of disqualification was improper, the first three options remain available to the trial judge. But the trial judge must avail himself to one of the three options before the ten-day period expires. A judge "must file an answer within section 170.3, subdivision (c)(3)'s 10-day period admitting or denying the allegations in the statement. If he fails to do so, he is deemed to have consented to the disqualification and he is disqualified." (*Urias v. Harris Farms* (1991) 234 Cal.App.3d 415, 421.)

Although we are not compelled to disqualify the trial judge under section 170.3, subdivision (c)(4), the disqualification statutes direct appellate courts to independently determine whether a different judge should hear future proceedings. "[O]n its own

paragraphs (3) and (4) of section 170.3, subdivision (c). By its own terms, the provision provides an exception only to paragraph (5) of subdivision (c), which precludes a challenged judge from passing upon 'his or her own disqualification or upon the sufficiency in law, fact, or otherwise, of the statement of disqualification filed by a party.' "].) The California Judges Benchbook also warns against only striking a statement of disqualification and recommends judges both strike the statement and file an answer to prevent the possibility of the automatic application of section 170.3, subdivision (c)(4). "Many judges recommend that a judge who orders a statement of disqualification to be stricken should also file a verified answer contesting the challenge. If a reviewing court determines that the statement should not have been stricken, the judge will be automatically disqualified when the judge has not filed an answer." (Cal. Judges Benchbook: Civil Proceedings-—Before Trial (CJER 2022) § 7.17, p. 557.)

motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court." (§ 170.1, subd. (c).)

"The power of the appellate court to disqualify a judge under … section 170.1, subdivision (c), should be exercised sparingly, and only if the interests of justice require it." (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 303.) "The interests of justice require it, for example, where a reasonable person might doubt whether the trial judge was impartial, or where the court's rulings suggest the 'whimsical disregard' of a statutory scheme." (*Ibid.*)

We acknowledge substantial issues exist whether a reasonable person might doubt the trial judge would be able to remain impartial, and allowing the trial judge the option to answer will result in further delay in what is already an exceedingly old case. However, appellate courts are to exercise restraint before using the authority under section 170.1, subdivision (c) to disqualify trial judges. Without possessing an answer from the trial judge, we lack the record normally presented to a judge deciding questions of disqualification. Discretion dictates we defer to the statutory process and procedure for determining questions of disqualification set forth in section 170.3, subdivision (c)(5)-(6).

We are cognizant that "delay thwarts the legislative intent underlying section 170.3(d) -- to promote judicial economy and to provide 'a speedy and fundamentally fair avenue to litigants who make a for-cause challenge.' " (*Curle*, *supra*, 24 Cal.4th at p. 1071.) Having noted the delays and irregularities in the disqualification proceedings leading to this writ proceeding, any future disqualification proceedings should be conducted with efficiency in mind. The language of section 170.3, subdivision (c), dictates as much, and requires the selection of the judge to review the question of

disqualification "be made as expeditiously as possible" and any hearings be held "as promptly as practicable." (§ 170.3, subd. (c)(5-6).)

## IV.    CONCLUSION

We approach this writ proceeding fully aware of the nature and age of this case, as well as knowing the issuance of the order to show cause and ultimate review of the writ caused additional delay. "With the enactment of section 170.3(d), fundamental fairness is promoted by ensuring that the parties, through a petition for a writ of mandate, receive ' "as speedy an appellate determination as possible." ' " (*People v. Hull* (1991) 1 Cal.4th 266, 273.) This process may not have been as speedy as the Legislature envisioned but was nonetheless necessary to "assure that even the shadow of bias is kept out of our courts." (*Barrera*, *supra*, 70 Cal.App.4th at p. 550.) Upon review, we conclude the trial judge lacked authority to strike Lennar Title's statement of disqualification. We therefore direct the issuance of a writ of mandate to vacate the ruling striking the statement of disqualification.

## DISPOSITION

Let a writ issue directing respondent Fresno County Superior Court, in case No. 07CECG01169, to vacate its August 26, 2022 order and reinstate Lennar Title's verified statement of disqualification. Upon reinstatement, the trial judge shall have three days to respond to the statement of disqualification in a manner set forth under section 170.3, subdivision (c)(2) or (c)(3), or otherwise be deemed to have consented to his disqualification under subdivision (c)(4). (§ 170.3, subd. (c)(2)-(4).) If the trial judge files a timely answer, the disqualification determination shall be heard by another judge agreed upon by the parties or selected by the Judicial Council following the procedures set forth in subdivision (c)(5) and (c)(6). (*Id.*, subd. (c)(5)-(6).)

This court's stay order is vacated upon the finality of this opinion as to this court.

47.

The parties' requests for judicial notice, filed on January 31, 2023, and February 15, 2023, are granted.

Lennar Title is the prevailing party and shall recover its costs in this writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)


                                                                    SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


SNAUFFER, J.